JUSTICE WEBER
dissents as follows:
I dissent from the conclusion of the majority opinion that plaintiff was an intended third-party beneficiary of AAC’s (American Adjustment Company) agreement with Century (Century Indemnity Company) and had a right to seek contract damages from AAC for its *74 failure to perform its administrative responsibilities in accordance with plaintiff’s rights under the Vehicle Service Contract (VSC).
Plaintiff purchased a 1986 Jeep Cherokee from Arnlund Automotive, Inc. d/b/a Arnlund Chrysler Plymouth Jeep (Arnlund). On August 29, 1986, plaintiff purchased a Vehicle Service Contract from Arnlund. The key part of the VSC is the following promise by Arnlund as dealer:
The Dealer [Arnlund] agrees that subject to all terms and conditions on the front of this Service Contract for the period indicated to make such repairs to the described vehicle as shall become necessary because of mechanical failure as defined herein.
The record does not demonstrate why Arnlund was not named as a party defendant. Plaintiff’s briefs suggest that the reason was because Arnlund was not the party making the decisions regarding the repair of plaintiff’s vehicle under the VSC.
The VSC showed it was administered by defendant MIA Services Contracts (MIA). In case of loss the pertinent provisions of the VSC are:
IN CASE OF LOSS
In the event of mechanical failure you may take your vehicle to any licensed repair facility. However, it is suggested that you take your vehicle back to the dealer from whom you purchased it. In your presence have the service manager contact the office of the administrator [MIA], ... You must contact the administrator before authorizing repairs ... No indemnity shall be payable under the service contract without authorization issued by the dealer [Arnlund] or administrator [MIA] prior to the repair or replacement of vehicle parts covered by this service contract.... The administrator [MIA]does not assume, and specifically disclaims any liability to you [plaintiff] for any benefits provided herein. The liability of the Administrator [MIA] is only to the Dealer [Arnlund] in accordance with their separate agreement.
Note that MIA as administrator was liable only to Arnlund as dealer and not to plaintiff. Plaintiff has named MIA as a party-defendant but because of the bankruptcy of MIA, it is not an active party.
The District Court in its Memorandum and Order made specific reference to the foregoing contractual provisions. The District Court made further reference to the contractual relationship between Arnlund and Century, stating:
In connection with the VSC Arnlund also had an “Automobile Extended Service Contract Policy” with Century. Arnlund was the *75 insured and Century the insurer. ... Century agreed to insure Arnlund to pay under certain conditions and subject to some self insurance provisions “losses arising out of the reasonable and customary cost of repair or replacement under and in accord with the all of the terms of the extended service contracts issued by the insured [Arnlund] on or after the inception date of this policy”. ...
The District Court further established the relationship between various parties stating:
The deposition of Robert McCallister, the general manager of American [AAC] establishes the relationships between American [AAC], Century and related companies. When MIA filed bankruptcy Century took steps to protect consumers and itself concerning contracts it had insured such as the contract with plaintiff. ... Century is a wholly owned subsidiary of CIGNA. ... Century did not have an adjusting department and American [AAC] was used for that purpose. American was a previously dormant company revived for the purpose of adjusting the claims of dealers for which MIA had acted as administrator under VSC contracts. American is also a wholly owned subsidiary of CIGNA. Neither Century nor American were involved in any way in marketing any VSC contracts or the particular contract issued to plaintiff in 1986. ... (Emphasis supplied.)
The uncontradicted facts in the record establish that the District Court was correct in its above stated conclusions.
With further regard to AAC the District Court stated:
The only defendant who has appeared is American [AAC] which is the wholly owned subsidiary of CIGNA given the job of adjusting the VSC contracts administered by MIA-after its business failure. The reason American is adjusting the contracts is because of the automobile extended service contract policy written by Century, another wholly owned subsidiary of CIGNA. That policy names Arnlund as the insured and Century as the insurer. ...
It is important to emphasize the District Court’s further analysis and conclusions as follows:
Century’s sole involvement in this case is because of its automobile extended service contract policy written in favor of Arnlund where it has agreed to insure Arnlund for “losses arising out of the reasonable and customary costs of repair or replacement” under the VSC (McCallister Depo. Ex. 12). American’s sole involvement is its charge to adjust the claims for Century under previously *76 issued VSC’s naming MIA as administrator after the business failure of MIA.
Under no theory are Century and American parties to the VSC who could be sued directly by plaintiff for breach of contract or breach of covenants running with the contract. The VSC is between plaintiff and Arnlund. Perhaps MIA could be held liable under the contract as the principal represented by its agent Arnlund but there is no theory whereby Century and American are themselves parties to the contract with plaintiff. (Emphasis added.)
The District Court emphasized that Century was involved only because of its policy written in favor of Arnlund. The uncontradicted record supports that conclusion. At this point I emphasize that AAC’s sole involvement was to adjust the claims for Century and Arnlund. As previously mentioned, AAC was not in any way administering the VSC in the manner in which MIA was required to do under the terms of the plaintiff-Arnlund VSC.
The deposition of Robert McCallister relied upon by the District Court establishes that CIGNA came to the realization that it was going to have to take over the obligation of adjusting the losses on contracts which were in existence with the public. Century and AAC both are wholly owned subsidiaries of CIGNA. The deposition established that Century arranged for the adjustment of its claims with Arnlund through AAC. The specific terms of that arrangement, whether oral or in writing, are not established in the record. The deposition further established that AAC had done nothing with regard to marketing, and was not in any way involved with VSC contracts such as that between plaintiff and Arnlund, with the exception only of the adjustment of claimed losses.
The majority opinion states as follows:
While it is true that plaintiff had no direct contractual arrangement with AAC, AAC did, by necessary inference, enter into some agreement with Century to adjust claims made pursuant to plaintiff’s vehicle service contract with Arnlund. When it did so, it assumed the administrative responsibility formerly promised by MIA. It also impliedly agreed to handle those responsibilities in a manner consistent -with Amlund’s obligations under the contract.
I find nothing in the record which establishes an assumption by AAC of any administrative responsibilities formerly promised by MIA. Clearly that is a reference to the VSC between plaintiff and Arnlund. There is nothing in the record to demonstrate that AAC assumed any *77 administrative responsibilities under that VSC, and in particular nothing which demonstrates it was obligated to take the place of MIA. I find nothing in the record from which the opinion may conclude that AAC impliedly agreed to handle the responsibilities in a manner consistent with Arnlund’s obligation under the contract — again an apparent reference to Arnlund’s obligation to the plaintiff under his VSC.
After referring to the Restatement provisions, the majority opinion states as follows:
In this case, Century enlisted the services of AAC to adjust claims under Arnlund’s extended service agreement because of Century’s obligation to insure against those claims and possibly pay money to claimants like plaintiff. Therefore, we conclude that when AAC agreed to administer the plaintiff’s rights under the contract, the performance of its promise to do so satisfied an obligation of Century and Arnlund to plaintiff. And since AAC has exclusive authority to approve or disapprove claims under the contract, we also conclude that it is appropriate to recognize plaintiff’s right to performance in order to effectuate the intentions of the parties that plaintiff receive all benefits provided for under his contract with Arnlund.
The record does not support the conclusion that AAC agreed to “administer the plaintiff’s rights under the contract.” At most AAC agreed to adjust the claims made against Arnlund under the provisions of the contract between Arnlund and Century. That contract of course is not directly connected to the VSC contract between plaintiff and Arnlund. We find no record basis to conclude that AAC agreed to administer the plaintiff’s rights under the contract, by which I assume reference is made to the VSC between plaintiff and Arnlund.
Next the majority states that AAC has “exclusive authority” to approve or disapprove claims under the contract from which it concludes that it is appropriate to recognize plaintiff’s right of performance. The record does not support the conclusions that AAC had exclusive authority to approve or disapprove claims. Apparently the majority is referring to the provisions of the VSC between plaintiff and Arnlund which does provide that MIA must be contacted. There is nothing in the record to establish that AAC in any way assumed the responsibilities of MIA. As a result I disagree emphatically with the conclusion that it is appropriate to recognize plaintiff’s right to *78 performance to effectuate the intentions of the parties. The record does not substantiate any intention that AAC should succeed to any of the obligations of MIA under the plaintiff-Arnlund VSC.
Next the majority opinion states:
For these reasons, we conclude that plaintiff was an intended third-party beneficiary of AAC’s agreement with Century, and he had a right to seek contract damages from AAC for its failure to perform its administrative responsibilities in accordance with his rights under the vehicle service contract.
I find no record basis for the foregoing conclusion. The record demonstrates that AAC did not have any obligation to perform administrative responsibilities of any type and in particular not under the VSC between plaintiff and Arnlund.
I conclude the record supports all of the findings and conclusions on the part of the District Court. I dissent from the opinion’s reversal of the summary judgment by the District Court. I would affirm the District Court.
CHIEF JUSTICE TURNAGE and JUSTICE McDONOUGH concur in the foregoing dissent.